CONSUMERS POWER COMPANY v ATTORNEY GENERAL

Docket Nos. 79277, 79278. Decided August 26, 1986. On application by the defendants for leave to appeal, the Supreme Court, in lieu of granting leave, affirmed the judgments of the Ingham Circuit Court and the Court of Appeals.

Consumers Power Company and the Detroit Edison Company brought an action in the Ingham Circuit Court against the Attorney General, the Secretary of State, and the Board of State Canvassers, seeking a declaration that MCL 168.472a; MSA 6.1472(1) is constitutional. The court, Robert Holmes Bell, J., sustained the constitutionality of the statute, and the Court of Appeals, R. B. BURNS, P.J., and CYNAR and HOOD, JJ., affirmed (Docket Nos. 94110, 94229). The defendants seek leave to appeal.

In an opinion per curiam, signed by Chief Justice WILLIAMS, and Justices LEVIN, BRICKLEY, CAVANAGH, BOYLE, and ARCHER, the Supreme Court *held:*

The circuit court and the Court of Appeals correctly determined that MCL 168.472a; MSA 6.1472(1) is constitutional. Const 1963, art 12, § 2 clearly authorizes the Legislature to prescribe by law the manner of signing and circulating petitions to propose constitutional amendments. In this case, the Legislature has followed the dictates of the constitution in promulgating the statute. The statute establishes no time limit for obtaining signatures. Rather, it provides that a signature affixed to a petition more than 180 days before the petition is filed is presumed stale and void, a presumption which may be rebutted.

Affirmed.

Justice RILEY took no part in the decision of this case.

*Miller, Canfield, Paddock & Stone* (by *John D. Pirich* and *Michael J. Hodge*) for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gary P. Gordon,* Assistant Attorney General, for the defendants.

Amici Curiae:

*L. Brooks Patterson* and *Michael J. Modelski* for Citizens for Capital Punishment.

*Tom Downs, P.C., Eugene G. Wanger,* and *Dorean M. Koenig* for Michigan Coalition Against the Death Penalty.

PER CURIAM. In this declaratory judgment action brought by Consumers Power Company and the Detroit Edison Company, the Ingham Circuit Court and the Court of Appeals have determined that MCL 168.472a; MSA 6.1472(1) is constitutional. We affirm the judgments of those courts.

I

In 1973, the Legislature enacted 1973 PA 112 which provides:

> It shall be rebuttably presumed that the signature on a petition which proposes an amendment to the constitution or is to initiate legislation, is stale and void if it was made more than 180 days before the petition was filed with the office of the secretary of state.

The next year, however, this legislation, MCL 168.472a; MSA 6.1472(1) was said to be unconstitutional by the Attorney General in OAG 1973-1974, No 4813, pp 171-174 (August 13, 1974).

II

On June 4, 1986, the plaintiffs filed a declaratory judgment action in the Ingham Circuit Court. They sought a declaration that MCL 168.472a; MSA 6.1472(1), which had never been declared

unconstitutional by a court, was indeed constitutional. Plaintiffs named the Attorney General, the Secretary of State, and the Board of State Canvassers as defendants. The matter was tried on stipulated facts. Briefs were filed and oral arguments were made. On July 18, 1986, the trial judge sustained the constitutionality of the statute.

The defendants appealed this ruling to the Court of Appeals. The Court of Appeals gave the matter expedited consideration and, on August 18, 1986, unanimously affirmed the trial court's ruling.

The defendants thereafter filed an application for leave to appeal with this Court on August 20, 1986.

### III

Much of the debate in this matter centers on language contained in art 12, § 2 of our present constitution:

AMENDMENT BY PETITION AND VOTE OF ELECTORS. Sec. 2. Amendments may be proposed to this constitution by petition of the registered electors of this state. Every petition shall include the full text of the proposed amendment, and be signed by registered electors of the state equal in number to at least 10 percent of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected. Such petitions shall be filed with the person authorized by law to receive the same at least 120 days before the election at which the proposed amendment is to be voted upon. *Any such petition shall be in the form, and shall be signed and circulated in such manner, as prescribed by law.* The person authorized by law to receive such petition shall upon its receipt determine, as provided by law, the validity and sufficiency of the signatures on the petition, and make an official

announcement thereof at least 60 days prior to the election at which the proposed amendment is to be voted upon.

SUBMISSION OF PROPOSAL; PUBLICATION. Any amendment proposed by such petition shall be submitted, not less than 120 days after it was filed, to the electors at the next general election. Such proposed amendment, existing provisions of the constitution which would be altered or abrogated thereby, and the question as it shall appear on the ballot shall be published in full as provided by law. Copies of such publication shall be posted in each polling place and furnished to news media as provided by law.

BALLOT, STATEMENT OF PURPOSE. The ballot to be used in such election shall contain a statement of the purpose of the proposed amendment, expressed in not more than 100 words, exclusive of caption. Such statement of purpose and caption shall be prepared by the person authorized by law, and shall consist of a true and impartial statement of the purpose of the amendment in such language as shall create no prejudice for or against the proposed amendment.

APPROVAL OF PROPOSAL, EFFECTIVE DATE; CONFLICTING AMENDMENTS. If the proposed amendment is approved by a majority of the electors voting on the question, it shall become part of the constitution, and shall abrogate or amend existing provisions of the constitution at the end of 45 days after the date of the election at which it was approved. If two or more amendments approved by the electors at the same election conflict, that amendment receiving the highest affirmative vote shall prevail. [Emphasis supplied.]

Changes in language had been adopted from that employed in Const 1908, art 17, § 2, the predecessor of Const 1963, art 12, § 2. The just mentioned provision of the 1908 Constitution read in relevant part:

Amendments may also be proposed to this con-

stitution by petition of the qualified voters of this state. Every such petition shall include the full text of the amendment so proposed, and be signed by not less than ten percent of the legal voters of the state. Initiative petitions proposing an amendment to this constitution shall be filed with the secretary of state at least four months before the election at which such proposed amendment is to be voted upon. Upon receipt of such petition by the secretary of state he shall canvass the same to ascertain if such petition has been signed by the requisite number of qualified electors, and if the same has been so signed, the proposed amendment shall be submitted to the electors at the next regular election at which any state officer is to be elected. . . . The total number of votes cast for governor at the regular election last preceding the filing of any petition proposing an amendment to the constitution, shall be the basis upon which the number of legal voters necessary to sign such a petition shall be computed. . . . The petition shall consist of sheets in such form and having printed or written at the top thereof such heading as shall be designated or prescribed by the secretary of state. Such petition shall be signed by qualified voters in person only with the residence address of such persons and the date of signing the same.

Of extreme importance to resolution of the present controversy is focus on the absence of a call for legislative action in Const 1908, art 17, § 2 and the clear presence of one in Const 1963, art 12, § 2 as evidenced in the sentence:

Any such petition shall be in the form, and shall be signed and circulated in such manner, as prescribed by law.

The defendants strenuously argue that the above-quoted sentence found in art 12, § 2 should not be construed to authorize the Legislature to enact a

law which provides for the staleness of signatures, subject to a rebuttable presumption. We disagree.

The language just quoted from art 12, § 2 of our constitution clearly authorizes the Legislature to prescribe by law for the manner of signing and circulating petitions to propose constitutional amendments. As the Court of Appeals observed in this case:

> The challenged statute is within the Legislature's authority to provide for the circulation of petitions and other elections procedures.

Defendants point out that in *Ferency v Secretary of State,* 409 Mich 569, 590-591; 297 NW2d 544 (1980), we stated that

> Const 1963, art 12, § 2 provides for the exercise of the right of popular amendment and describes the conditions imposed on that right. This section is self-executing—it does not depend upon statutory implementation.

However, this Court also subsequently ruled in the case of *Citizens for Capital Punishment v Secretary of State,* 414 Mich 913 (1982), in interpreting the same sentence of art 12, § 2, that

> In contending that the Board of State Canvassers did not perform its duty, the plaintiffs primarily argue that art 12, § 2 of the constitution contains all of the requirements for valid signatures and thus that the only requirement for a valid signature is that the signer be a registered voter of the State of Michigan. However, art 12, § 2, in addition to providing that petitions circulated to propose constitutional amendments must be signed by "registered electors of the state," also states that "[a]ny such petition shall be in the form, and shall be signed and circulated in such manner, as

*prescribed by law."* (Emphasis supplied.) MCL 168.544c; MSA 6.1544(3) and MCL 168.544d; MSA 6.1544(4) set forth the other requirements which are "prescribed by law." Const 1963, art 12, § 2 is the successor of Const 1908, art 17, §§ 2 and 3. The relevant provisions of the 1908 Constitution described in detail the form and manner for the signing of petitions. The Convention Comment provided for the 1963 Constitution indicates that "[d]etails as to form of petitions, their circulation and other elections procedures are left to the determination of the legislature." In enacting MCL 168.544c; MSA 6.1544(3) and MCL 168.544d; MSA 6.1544(4), the Legislature has provided those details as contemplated by art 12, § 2 of the 1963 Constitution.

\* \* \*

The plaintiffs have also argued that to the extent that there are requirements for valid signatures other than that the signers be registered electors, those other requirements are unconstitutional. However, those requirements, in essence, are authorized by the constitution itself, which specifically directs that "any such petition shall be in the form, and shall be signed and circulated in such manner, as prescribed by law." The Legislature *has* set forth the form of the petition. In enacting these statutory requirements, therefore, the Legislature has followed the dictates of the constitution, an action which cannot, in this instance, be said to be unconstitutional. Furthermore, the requirements of these statutes serve to further the important state interest of insuring the purity of elections. [414 Mich 914-915.]

So too in the present situation, the Legislature has followed the dictates of the constitution in promulgating MCL 168.472a; MSA 6.1472(1). The statute sets forth a requirement for the signing and circulating of petitions, that is, that a signature which is affixed to a petition more than 180 days before that petition is filed with the Secretary

of State is rebuttably presumed to be stale and void. The purpose of the statute is to fulfill the constitutional directive of art 12, § 2 that only the registered electors of this state may propose a constitutional amendment.

The statute does not set a 180-day time limit for obtaining signatures. The statute itself establishes no such time limit. It states rather that if a signature is affixed to a petition more than 180 days before the petition is filed it is presumed to be stale and void. But that presumption can be rebutted.[1]

The defendants place considerable reliance on this Court's decision in *Hamilton v Secretary of State,* 221 Mich 541; 191 NW 829 (1923). In that case, the Attorney General argued that signatures to an initiatory petition had to be attached "within a reasonable period before its filing . . . ." In rejecting that contention, we stated:

> The constitutional provision contains procedural rules, regulations and limitations; it maps the course and marks the way for the accomplishment of an end; *it summons no legislative aid and will brook no elimination or restriction of its requirements;* it grants rights and conditions expressed, and if its provisions are complied with and its procedure followed its mandate must be obeyed. Its provisions are prospective in operation and self-executing. The vote for governor every two years fixes the basis for determining the number of legal voters necessary to sign an initiatory petition and start designated official action. [Emphasis supplied. 221 Mich 544.]

The flaw in the defendants' argument, however,

---

[1] We express no opinion in this action as to the validity of the procedures adopted by the Board of State Canvassers for rebutting the presumption of staleness and voidness. This aspect of the matter was not presented to or ruled on by the trial court or ruled on by the Court of Appeals.

is that nowhere in the 1908 Constitution, which was interpreted by this Court in *Hamilton, supra,* was the phrase "any such petition shall be in the form, and shall be signed and circulated in such manner as prescribed by law." This distinction is of considerable significance and indeed provides the authorization for the Legislature to have enacted MCL 168.472a; MSA 6.1472(1).[2] The Constitution of 1963, unlike that of 1908, does summon legislative aid in the area of the form of these petitions as well as in the areas of circulation and signing.

MCL 168.472a; MSA 6.1472(1) is presumed to be constitutional. *Hall v Calhoun Co Bd of Supervi-*

[2] We note in passing that art 2, § 8 of the 1963 Constitution provides:

Laws shall be enacted to provide for the recall of all elective officers except judges of courts of record upon petition of electors equal in number to 25% of the number of persons voting in the last preceding election for the office of governor in the electoral district of the officer sought to be recalled. The sufficiency of any statement of reasons or grounds procedurally required shall be a political rather than a judicial question.

In response to the constitutional directive, the Legislature enacted 1969 PA 189, MCL 168.955; MSA 6.1955 which provided:

The petitions shall be signed by registered and qualified electors equal to at least 25% of the number of votes cast for candidates for the office of governor at the last preceding general election in the electoral district of the official sought to be recalled. *Any signatures obtained more than 90 days before the filing of such petition shall not be counted.* [Emphasis supplied.]

Thus the Legislature has promulgated a ninety-day "freshness" requirement for signatures on recall petitions. Furthermore, the Legislature has decreed that if those signatures are more than ninety days old they will not be counted. In OAG 1975-1976, No 4964, pp 403-406 (April 19, 1976), the Attorney General has opined that MCL 168.955; MSA 6.1955 is constitutional. As is obvious, there is no mention in art 2, § 8 of the constitution of any temporal limitation on the validity of signatures. Nor is there one extant in art 12, § 2. While we express no opinion on the Attorney General's conclusion with regard to MCL 168.955; MSA 6.1955, the positions taken appear inconsistent.

*sors,* 373 Mich 642; 130 NW2d 414 (1964). A court will not declare a statute unconstitutional unless it is plain that it violates some provisions of the constitution and the constitutionality of the act will be supported by all possible presumptions not clearly inconsistent with the language and the subject matter. *Oakland Co Taxpayers' League v Oakland Co Supervisors,* 355 Mich 305, 323; 94 NW2d 875 (1959). We conclude that both the Ingham Circuit Court and the Court of Appeals have correctly determined that this statute is constitutional.[3]

We find defendants' other allegations of error to be without merit.

Accordingly, pursuant to MCR 7.302(F)(1), in lieu of granting leave to appeal, we affirm the judgments of the Ingham Circuit Court and the Court of Appeals.

Pursuant to MCR 7.317(C)(3), the clerk is directed to issue the judgment order of this Court forthwith.

WILLIAMS, C.J., and LEVIN, BRICKLEY, CAVANAGH, BOYLE, and ARCHER, JJ., concurred.

---

[3] The defendants also allege that the 180-day time period specified in the statute is unconstitutional in that it is too short a time period and therefore burdens their use of the initiative process. However, as Judge CYNAR of the Court of Appeals pointed out:

While it might have been shown that 180 days is insufficient time in which to collect a required number of valid signatures, that showing was not made in circuit court. The record contains no evidence that the 180-day limitation does or does not impose an unreasonable burden on the people's right to propose constitutional amendments. Accordingly, the trial court [judge] correctly concluded, on the record before him, that he could not say as a matter of law that the statute's presumption of validity had been overcome.

This Court expresses no opinion on this question for the reasons specified by Judge CYNAR.